IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Eric Thomas, et al., | Case No. 3:09 CV 716 |
| Plaintiffs, | MEMORANDUM OPINION AND ORDER |
| -vs- | JUDGE JACK ZOUHARY |
| Stacey L. Arnold, et al., | |
| Defendants. | |

## INTRODUCTION

Plaintiffs filed this action against three officers of the Ohio State Highway Patrol for allegedly stopping and searching their vehicle without probable cause and on a racially discriminatory basis (Doc. No. 1). Defendants filed a Motion for Summary Judgment (Doc. No. 20) after this Court gave Defendants leave to file a delayed Motion for the limited purpose of examining the initial stop under *Johnson v. Crooks*, 326 F.3d 995 (8th Cir. 2003) (Doc. No. 18). Plaintiffs filed an Opposition (Doc. No. 23), and Defendants replied (Doc. No. 24).

## BACKGROUND

Plaintiffs Eric Thomas and Michael Brent are African-American males. Brent is married to Thomas' sister. In May 2008, a few months after Thomas' mother passed away, Plaintiffs traveled to her home in Montana to take her belongings back to the Thomas home in Maine.

On May 20, on the return trip from Montana, Plaintiffs were driving on Interstate 80 near Findlay, Ohio. Thomas was driving a rented U-Haul truck and Brent was riding as a passenger. As they drove down the highway, Plaintiffs passed Defendant Stacey Arnold, an officer with the Ohio State Highway Patrol. Arnold was parked in a crossover operating a criminal interdiction unit with

a drug-detecting canine. After observing the U-Haul, Arnold immediately exited the crossover, accelerated, and pulled alongside the truck. As she did this, she typed a message to her partner, Defendant Ryan Stewart, on her vehicle's mobile computer terminal informing Stewart that she was "looking at the U-Haul on the off chance its with the MH" (Arnold Dep. pp. 150, 153) "MH" referred to a motor home driving near the U-Haul. Arnold pulled alongside the U-Haul and, while staring at Thomas and Brent, told Stewart over the CB that she was going to stop the truck. At this time she identified the race of Plaintiffs to Stewart and Defendant David Schultz.

Defendants' depositions regarding the details of the racial identification is conflicting. Each Defendant testified that Arnold identified Thomas as a white male and Brent as an African-American male (Arnold Dep. p. 147; Schultz Dep. p. 10; Stewart Dep. p. 51). However, at two other points in her deposition, Arnold testified that when she first saw Plaintiffs she identified them both as African-American males (Arnold Dep. pp. 12, 146).

Arnold also testified that she observed the U-Haul's right tire cross over the white line on two separate occasions (Arnold Dep. pp. 9-11) -- an occurrence that, if true, would constitute a violation of Ohio Revised Code Section 4511.33.[1] Arnold was not able to recall whether she observed the tire crossing the line before or after she had pulled alongside the cab of the truck (Arnold Dep. pp. 12, 153-54). Plaintiffs both testified that the tire of the truck did not cross the line, and they did not feel the tire touch the rumble strip outside the line (Thomas Dep. pp. 22-23; Brent Dep. p. 12).

---

[1] "Whenever any roadway has been divided into two or more clearly marked lanes for traffic . . . [a] vehicle . . . shall be driven, as nearly as is practicable, entirely within a single lane or line of traffic and shall not be moved from such lane or line until the driver has first ascertained that such movement can be made with safety . . . whoever violates this section is guilty of a minor misdemeanor."

After Arnold pulled over the vehicle, she questioned both men separately, performed a patdown, placed the men in separate police vehicles during a drug-sniffing dog search, and searched the vehicle after the dog "hit" on the truck. Defendants did not find any drugs or other contraband, and then released both Plaintiffs. Plaintiffs were retained a total of some forty-five minutes.

Plaintiffs brings Section 1983 claims alleging violations of the Fourth and Fourteenth Amendments, as well as a state law false arrest claim, and seek compensatory and punitive damages (Doc. No. 1, p. 7). The dispositive motion deadline was January 15, 2010, but Defendants requested leave to file a late Motion for Summary Judgment regarding the initial stop. This Court granted leave for the limited purpose of examining the initial stop (Doc. No. 18) ("Defendants are granted leave to file summary judgment on the initial traffic stop / qualified immunity, based on *Johnson v. Crooks*, 326 F.3d 995 (8th Cir. 2003)"). Defendants filed their Motion on February 2, 2010.

This Court will not address arguments exceeding the scope of the leave given. Defendants' argument regarding the Equal Protection claim, first raised by a mere footnote in the Memorandum in Support of the Motion (Doc. No. 20, p. 2), is unrelated to *Johnson* and therefore outside the scope of the granted leave. Leave was limited to address arguments based on *Johnson* regarding qualified immunity and the initial stop (Doc. No. 18). The Court did not grant leave to file a *carte blanche* motion given that the motion deadline had passed and a trial date set.

### STANDARD OF REVIEW

Pursuant to Federal Civil Rule 56(c), summary judgment is appropriate where there is "no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." *Id*. When considering a motion for summary judgment, a court must draw all inferences from the record in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith*

*Radio Corp.*, 475 U.S. 574, 587 (1986). The court is not permitted to weigh the evidence or determine the truth of any matter in dispute; rather, the court determines only whether the case contains sufficient evidence from which a jury could reasonably find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

## **ANALYSIS**

### *Qualified Immunity*

To prevail on a Section 1983 claim, a plaintiff must prove that some conduct by a person acting under color of state law deprived the plaintiff of a right secured by the Constitution or other federal law. *Johnson v. Karnes*, 398 F.3d 868, 873 (6th Cir. 2005). However, a defendant may be protected against such a claim by qualified immunity.

"The doctrine of qualified immunity generally shields state actors from liability under § 1983 based on their discretionary actions." *Thomas v. Cohen*, 304 F.3d 563, 568 (6th Cir. 2002) (citing *Anderson v. Creighton*, 483 U.S. 635, 638-40 (1987), and *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). In *Saucier v. Katz*, 533 U.S. 194 (2001), the Supreme Court held "if the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." *Id.* at 202. There are two steps to this inquiry: "[f]irst, a court must decide whether the facts that a plaintiff has alleged (see Fed. Civ. Proc. 12(b)(6), (c)) or shown (see Rules 50, 56) make out a violation of a constitutional right. *Saucier*, 533 U.S. at 201. Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Pearson v. Callahan*, 129 S. Ct. 808, 815-16 (2009). This two-step analysis can be made in any order. *Id.* at 818.

4

Defendants argue they are entitled to qualified immunity. However, because there are disputed facts related to the first *Saucier* step -- whether a constitutional violation has been alleged or shown -- Defendants' arguments fail. Whether an official receives qualified immunity is only a question of law when there are no material facts in dispute. *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 900 (6th Cir. 2004). In examining the qualified immunity issue on summary judgment, the court cannot weigh evidence or make credibility determinations. *Id.* The jury must decide at trial the weight of evidence and the credibility of witnesses. *Id.* Here, Plaintiffs' Fourth Amendment case turns on a credibility determination. Thus, this Court is faced with a question of fact, rather than a question of law, and cannot find that Defendants are entitled to qualified immunity.

*Disputed Facts Regarding Initial Stop*

Defendants argue that because Arnold claims she saw the truck's tire cross the white line, she had probable cause to conduct a traffic stop on the vehicle. Defendants rely on two cases, *Johnson v. Crooks*, 326 F.3d 995 (8th Cir. 2003), and *United States v. Sanford*, 476 F.3d 391 (6th Cir. 2007). Neither case is convincing.

*Johnson v. Crooks*

*Johnson* held that an officer's statement that he observed the plaintiff's car cross the center line was sufficient to establish probable cause and qualified immunity. But *Johnson*, from the Eighth Circuit, is not binding on this Court. This Court also believes *Johnson* misstates the law.

In *Johnson*, an officer followed the plaintiff for eleven miles, until finally pulling her over for a lane violation. Johnson brought suit under Section 1983 for violation of the Fourth and Fourteenth Amendments. Johnson asserted she did not cross the lane and the officer said he saw her cross the

5

line, thus creating, it would seem, a material issue of fact precluding summary judgment. So held the district court, but a divided panel of the Eighth Circuit Court of Appeals ruled otherwise.

The majority held the officer was entitled to summary judgment, because a traffic stop under "fourth amendment reasonableness is judged by the standard that applies to investigatory stops – whether 'the officer's action is supported by reasonable suspicion to believe that criminal activity may be afoot.'" *Johnson*, 326 F.3d at 998 (quoting *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (a criminal appeal)). Because the officer stated he perceived a lane violation, the majority felt that it was "objectively reasonable" for the officer to stop Johnson to determine if she was competent to continue her travels.

The *Johnson* majority assumes police veracity: if an officer *says* he perceived a traffic violation, then he perceived a traffic violation. Based only on the officer's testimony, the majority finds he "observed Ms. Johnson's car crossing the center line more than once on a two-lane rural highway rather early the morning." *Id.* at 999. The majority assumes the officer's testimony is true, even in the face of a contradictory affidavit by Johnson. As the dissent correctly notes: "Such a conclusion assumes that Ms. Johnson swerved her car. In essence, the majority says that it believes [the officer] is telling the truth and Ms. Johnson is not." *Id.* at 1002.

The dissent further notes the majority incorrectly applied the summary judgment standard: "the majority recites disputed issues of fact in favor of the moving party and does not give any credence to the nonmoving party's claims. This approach is contrary to every rule governing summary judgment and leads the majority to improperly grant summary judgment for the Defendant." *Johnson*, 326 F.3d at 1001. The Eleventh Circuit has echoed this criticism in *Miller v. Harget*, 458 F.3d 1251, 1256 (11th Cir. 2006) ("We decline to adopt today the Eighth Circuit's rule in *Johnson* . . . . [I]t is not

6

proper to grant summary judgment on the basis of credibility choices."). No other circuit has adopted the majority opinion in *Johnson*, and this Court declines to follow it here.

*United States v. Sanford*

*Sanford* was an appeal from a criminal suppression decision that held that the "relevant inquiry" for Fourth Amendment purposes "is whether the police officer possessed probable cause or reasonable suspicion to believe that a traffic violation occurred, not whether a traffic violation in fact occurred." *Sanford*, 476 F.3d at 396 n. 2 (6th Cir. 2007). *Sanford* is inapposite because a trial judge is allowed to weigh evidence and determine credibility at a suppression hearing. When considering whether to suppress evidence in a criminal case, a court addresses a mixed question of law and fact. *United States v. Hurst*, 228 F.3d 751, 756 n. 1 (6th Cir. 2000). Therefore, a court can appropriately weigh evidence and determine credibility when deciding whether to suppress evidence. *See, e.g., Sanford*, 476 F.3d at 395 ("The district court found credible the testimony of [the police officer]" regarding whether probable cause existed.). However, in deciding summary judgment in a *civil* case, a court cannot weigh evidence or determine credibility. *Anderson*, 477 U.S. at 249. Therefore, the dispute over Arnold's credibility is an issue for the jury.

*Whether Plaintiffs have raised a disputed issue of material fact*

Defendants argue Plaintiffs have not raised an issue of *material* fact. But Defendants' argument assumes that Arnold is telling the truth when she states she observed the truck's tire cross the white line. Plaintiffs' testimony, that they did not cross the line, places Arnold's veracity into dispute.

Every fact witness testifies as to what was seen, heard, touched, smelled, or tasted. For example, if a witness testified that a traffic light was red when an accident occurred, he is actually testifying that he *observed* the traffic light to be red. That witness could be wrong in one of three

7

ways: either he could be lying, he could incorrectly remember what he observed, or he could be wrong on the color of the traffic light. Similarly, Plaintiffs' position that they did not cross the line, if true, can be reconciled with Arnold's testimony in the same possible manner -- she could be lying, remembering incorrectly, or truthfully reporting an erroneous observation. Defendants (similar to the majority in *Johnson*) assume the only way her testimony can be suspect is the last of these (which, in a criminal case, would not disturb a probable cause finding) but they disregard the first two possibilities. Only the last possibility -- a good faith, erroneous observation -- is immaterial to the Fourth Amendment analysis. The question of Arnold's credibility is therefore a disputed issue of *material* fact.

### CONCLUSION

This case is not suited for summary judgment because it is not this Court's role to weigh the credibility of Arnold's statement. The trier of fact must decide her credibility, and that of Plaintiffs, at trial. Therefore, the Motion is denied.

IT IS SO ORDERED.

    s/ *Jack Zouhary*
JACK ZOUHARY
U. S. DISTRICT JUDGE

March 18, 2010

8