IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Eric Thomas, et al.,                                          Case No. 3:09 CV 716

                                   Plaintiffs,          MEMORANDUM OPINION
                                                        AND ORDER
                    -vs-
                                                        JUDGE JACK ZOUHARY
Stacey L. Arnold, et al.,

                                   Defendants.

#### INTRODUCTION

Pending is Defendants' Motion for Reconsideration (Doc. No 26) and Plaintiffs' Opposition (Doc. No. 27).  In its previous Order, the Court denied summary judgment on the issue of whether the initial stop violated Plaintiffs' Fourth Amendment rights (Doc. No. 25).  This Order supplements the prior Order as this Court now considers additional arguments raised by Defendants.  After the initial stop, Defendants captured the entire incident on video (with poor audio), which is part of the Court Record (Doc. No. 20-6). The facts and standard of review for summary judgment are incorporated from this Court's prior Order.

**Fourth Amendment Application to Actions After Initial Stop**

Defendants claim they are entitled to qualified immunity for actions taken after the initial stop. Defendants argue extensively about how their later actions did not convert a lawful stop to an unlawful stop, but they fail to recognize that the initial stop may have been unlawful and, if so, how that affects later actions.  If the initial stop was unlawful, then the ensuing forty-five minutes investigating Plaintiffs and searching their vehicle would likewise be unlawful.

Defendants rely primarily on cases addressing whether a lawful initial stop at some later point becomes unlawful (Doc. No. 20, pp. 12-13). *See, e.g.*, *United States v. Bell*, 555 F.3d 535, 540 (6th Cir. 2009) ("[Appellant] does not dispute that the Officers had probable cause to initiate the traffic stop."); *United States v. Ellis*, 497 F.3d 606 (6th Cir. 2007) ("It is undisputed that the initial stop was constitutional."). Defendants also cite *United States v. Sharpe*, 470 U.S. 675, 676 (1985), in their reply brief. *Sharpe* dealt with whether an investigative *Terry* stop of a vehicle had turned into an unlawful seizure by virtue of the length of the detention. *Sharpe*, 470 U.S. at 676-78. However, Defendants do not argue the stop here was a *Terry* investigative stop, but quite clearly claim it was a lawful traffic stop for crossing a marked lane. *Sharpe* is inapplicable.

Whether Defendants unlawfully detained Plaintiffs or unlawfully conducted pat-down searches of Plaintiffs after the initial traffic stop turns on whether the initial stop was itself lawful. *Cf. Arizona v. Johnson*, 129 S. Ct. 781, 788 (2009) ("An officer's inquiries into matters unrelated to the justification for the [lawful] traffic stop . . . do not convert the encounter into something other than a *lawful* seizure, so long as those inquiries do not measurably extend the duration of the stop.") (emphasis added); *United States v. Torres-Ramos*, 536 F.3d 542, 550 (6th Cir. 2008) ("[O]nce the purpose of the [lawful] traffic stop is completed, a police officer may not further detain the vehicle or its occupants unless something that occurred during the traffic stop generated the necessary reasonable suspicion to justify a further detention.") (internal quotations omitted).

If the initial stop was lawful, the Court could then inquire into whether Defendants extended the duration of the stop beyond the bounds of the Fourth Amendment. However, viewing the facts in a light most favorable to Plaintiffs, the Court must assume the initial stop was unlawful (Doc. No.

2

25), and Defendants have not offered any argument why actions taken in extension of an unlawful stop are not themselves unlawful.

**Equal Protection**

Defendants also move for summary judgment on Plaintiffs' Equal Protection claim for selective enforcement. Defendants first advanced this argument in a footnote in their initial brief (Doc. No. 20, p. 2 n. 1).

A prima facie case of selective enforcement based on race requires a plaintiff to show discriminatory effect and discriminatory purpose. *Farm Labor Org. Comm. v. Ohio State Highway Patrol*, 308 F.3d 523, 533-34 (6th Cir. 2002). A plaintiff may "demonstrate discriminatory effect . . . through the use of statistical evidence or other evidence which address[es] the crucial question of whether one class is being treated differently from another class that is otherwise similarly situated." *Id.* at 534. An invidious discriminatory purpose may be inferred from the totality of relevant facts, including a showing that the practice bears more heavily on one race than another. *Id.* (citing *Washington v. Davis*, 426 U.S. 229, 242 (1976)).

Plaintiffs supplied statistics purporting to show Defendants have more frequently called for a canine search of vehicles containing African-American or Hispanic men. Defendants argue these statistics are unreliable because of their small sample size. The parties presented dueling expert affidavits on the statistical evidence. Plaintiffs' expert presents the available data, asserting it shows that Arnold was 3.5 times more likely to call a canine search on African American men than on white men, and 3.1 times more likely to call a canine search on Hispanic men than on white men (Doc. No. 23-6). Plaintiffs' expert also asserts that Defendant Stewart was 5.4 times more likely to call a canine search on African American men than on white men, and 3.5 times more likely to call a canine search

3

on Hispanic men than on white men.  Defendants' expert merely states that the sample sizes are "too small to render any meaningful data or conclusions about the activity of Trooper Arnold or Stewart," without further explanation (Doc. No. 24-1).

This Court expresses no opinion on the ultimate admissibility or weight due the experts' opinions.  Neither side has apparently deposed the other's expert and no *Daubert* challenge has been made to expert testimony based on qualifications or otherwise.  The Court must view the facts in the light most favorable to Plaintiffs in order to evaluate whether Plaintiffs make a prima facie case, and doing so here means viewing Plaintiffs' expert favorably.  *Id.* at 533 ("In assessing . . . qualified immunity, we first determine whether the facts, viewed in the light most favorable to the plaintiffs, show a violation of the plaintiffs' constitutional rights.").  At this stage, Plaintiffs have met their prima facie burden on discriminatory effect.

Plaintiffs have also met their prima facie burden on discriminatory purpose.  Discriminatory purpose may be inferred from the totality of relevant facts.  *Id.  Farm Labor* addresses what must be proven by a plaintiff to show selective enforcement when the traffic stop comported with the Fourth Amendment.  *Id.* (addressing selective enforcement "during the course of an otherwise lawful traffic stop.").  Here, a reasonable jury could conclude Arnold's testimony about the truck crossing the white line is not believable and this conclusion is properly considered when analyzing discriminatory purpose.  *See Bennett v. City of Eastpointe*, 410 F.3d 810, 822 n. 1 (6th Cir. 2005) (officer's "lack of suspicion . . . may properly be considered in the plaintiff's selective enforcement claim.").  Also, Arnold is unable to remember whether she observed the truck cross the white line before or after she pulled alongside the truck's cab and observed the race of Plaintiffs (Arnold Dep., pp. 12, 153-54).  And Defendants' depositions regarding the details of the racial identification is conflicting.  Each

4

Defendant testified that Arnold identified Thomas as a white male and Brent as an African-American male (Arnold Dep., p. 147; Schultz Dep., p. 10; Stewart Dep., p. 51). However, at two other points in her deposition, Arnold testified that when she first saw Plaintiffs she identified them both as African-American males (Arnold Dep., pp. 12, 146). In sum, Plaintiffs have met their burden; these facts, when viewed in a light most favorable to Plaintiffs, could lead to a reasonable inference by a trier of fact that Arnold intended to pull Plaintiffs over and call for a canine search on the basis of their race.

### False Arrest

Plaintiffs' second claim for relief is common law false arrest (Doc. No.1, ¶¶ 39-41). To succeed on a claim of false arrest, a plaintiff must establish that the defendants were without legal authority to arrest and detain him and that the detention was not accomplished pursuant to accepted legal procedures. *McFinley v. Bethesda Oak Hosp.*, 79 Ohio App. 3d 613, 619 (1992).

Defendants argue Plaintiffs were never arrested during the course of the stop. Under Ohio law, a police officer's seizure of a person is tantamount to a formal arrest when the following four elements are present: "(1) an intent to arrest, (2) under a real or pretended authority, (3) accompanied by an actual or constructive seizure or detention of the person, and (4) which is so understood by the person arrested." *State v. Darrah*, 64 Ohio St. 2d 22, 26 (1980). Here, Plaintiffs present no evidence supporting the first element -- intent to arrest. Nothing contradicts the stated intent to keep Plaintiffs in the police vehicles for safety reasons during the canine search (Arnold Dep., p. 159). Plaintiffs -- one of whom is a retired police officer -- have not demonstrated there was police contemplation of charging Plaintiffs with a crime. *See id.* ("an arrest . . . signifies the apprehension of an individual or the restraint of a person's freedom in contemplation of the formal charging with a crime").

5

Plaintiffs were never handcuffed, read their *Miranda* rights, or charged with a crime.  *See Krantz v. City of Toledo Police Dep't*, 365 F. Supp. 2d 832, 837 (N.D. Ohio 2005) (holding no arrest occurred for state law false arrest claim where the plaintiff spent most of time uncuffed, was never placed in a police car, given *Miranda* warnings, or charged with any crime).  While Plaintiffs may have felt they were not free to leave, this is not determinative in demonstrating intent to arrest.

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Reconsideration is granted; Defendants' Summary Judgment Motion as to immunity is denied, and the Motion as to false arrest is granted.

IT IS SO ORDERED.

    s/ *Jack Zouhary*
JACK ZOUHARY
U. S. DISTRICT JUDGE

March 31, 2010